**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| BLAKE OF CHICAGO COMPANY, *et al.,* | § § § | Case No. 04-12002 (Jointly Administered) |
| Debtors. | § | |

_____

| | | |
|---|---|---|
| A.B. DICK COMPANY and PARAGON CORPORATE HOLDINGS, INC., | § § § | |
| Plaintiffs, | § § | Case No. 1:05-cv-00116-KAJ |
| v. | § § | |
| MHR CAPITAL PARTNERS, L.P., MHR INSTITUTIONAL PARTNERS, L.P., MHRM, L.P., and MHR FUND MANAGEMENT LLC, | § § § § § | |
| Defendants. | § | |
| MHR CAPITAL PARTNERS, L.P., MHR INSTITUTIONAL PARTNERS, L.P., and MHRM, L.P., | § § § § | |
| Third Party Plaintiffs, | § § | |
| v. | § § | |
| N.E.S. INVESTMENT COMPANY, *et al.*, | § § § | |
| Third Party Defendants. | § | |

_____

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
MHR DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR
SUMMARY JUDGMENT ON COUNTS II AND III OF THE AMENDED COMPLAINT**

## **TABLE OF CONTENTS**

**Page**

Preliminary Statement ........................................................................................................1

Procedural Background .....................................................................................................1

Law and Argument ............................................................................................................3

      A.      The Debtors Have Satisfied Their Burden Under Fed. R. Civ. P. 12(B)(6)And Should Be Permitted to Pursue Its Claims Against MHR ...................................3

      B.      The Notes Provided MHR with Controlling Shareholder Status, Which Established Fiduciary Obligations To The Debtors As A Matter Of Law ..........4

      C.      MHR's Own Motion Identifies The Inequitable Conduct That Supports The Debtors Equitable Subordination And Breach of Fiduciary Claims As A Matter Of Law ........................................................................................................8

      D.      MHR Has Failed To Establish A Right To Judgment As A Matter Of Law ......10

Conclusion .......................................................................................................................12

# **TABLE OF AUTHORITIES**

**Case**                                                                                             **Page**

*Abex, Inc. v. Koll Real Estate Group*,
    Unreported Case No. 13462, 1994 Del Ch. LEXIS 213
    (Del. Ch. December 22, 1994)..................................................................................7

*Aluminum Mills Corp. v. Citicorp North America, Inc. (In re Aluminum Mills Corp.)*,
    132 B.R. 869(Bankr. N.D. Ill. 1991) ........................................................................5

*Badger Freightways, Inc. v. Continental Illinois Nat'l Bank and Trust Co.*
    *(In re* Badger Freightways*, Inc.)*, 106 B.R. 971 (Bankr. N.D. Ill. 1989)..........................5

*Bixler v. Central Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292 (3rd Cir. 1993).............10

*Business Funding Group, Inc. v. Architectural Renovators, Inc.*
    1993 Del Ch. LEXIS 51 (Del CH. Mar. 31, 1993) ......................................................7

*Century Glove, Inc. v. Iselin (In Matter of Century Glove, Inc.)*,
    151 B.R. *327* (Bankr. D. Del. 1993).........................................................................5

*Citicorp Venture Capital, Ltd. v. Comm. of Creditors Holding Unsecured Claims*,
    160 F.3d 982 (3rd Cir. 1997) ...................................................................................9

*Citron v. Steego*,
    Unreported Case No. 10171, 1988 Del. Ch. LEXIS 119
    (Del Ch. Sep. 8, 1988) ...........................................................................................8

*Conley v. Gibson*, 355 U.S. 41 (1957) ..........................................................................................3

*Gasoline Sales, Inc. v. Aero Oil Co.*, 39 F. 3d 70 (3rd Cir. 1994) ..................................................3

*Hechinger Investment Co. of Delaware, Inc. v. Fleet Retail Finance Group (In re Hechinger*
    Investment *Co. of Delaware)*, 274 B.R. 71 (D. Del. 2002) ............................................6

*High Strenth Steel, Inc. v. Lozinski (In re High Strength Steel, Inc.)*, 269 B.R. 560
    (Bankr. D. Del. 2001) ...........................................................................................5

*In re Burlington Coat Factory Sec. Litigation*, 114 F.3d 1410 (3rd Cir. 1997)............................3

*In re Cendant Corp. Derivative Action Litigation*, 189 F.R.D. 117 (D. N.J. 1999) ....................4

*In re Mid-American Waste Systems, Inc.* 284 B.R. 53 (Bankr. Del. 2002) ................................9

*In re Sea Land Corp. Shareholders Litig.*,
    Unreported Case No. 8453, 1987 Del. Ch. LEXIS 439
    (Del Ch. May 22, 1987) ..................................................................................................8

*In re Western National Corp. Shareholders Lit.*,
    Unreported No. 15927, 2000 Del. Ch. LEXIS 82
    (Del. Ch. May 22, 2000) ..................................................................................................8

*Ivanhoe Partners v. Newmont Mining Corp.*, 535 A.2d 1334 (Del. 1987) ..................................4

*Kahn v. Lynch Communication Systems, Inc.*, 638 A.2d 1110 (Del. 1993) ..................................4

*Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.*, 506 A.2d 173 ((Del. 1986) ....................4

*LaSalle Nat'l Bank v. Perelman*, 82 F.Supp.2d 279 (D. Del. 2000) .............................................5

*Loft, Inc. v. Guth*, 2 A.2d 225 (Del. Ch. 1938) .............................................................................4

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ..........................10

*Metro Ambulance, Inc. v. Eastern Medical Billing, Inc.,*
    Unreported Case No. 13929, 1995 Del Ch. LEXIS 84
    (Del Ch. July 5, 1995) .....................................................................................................7

*National Org. For Women v. Scheidler*, 510 U.S. 249 (1994) .....................................................3

*Odyssey Partners, L.P. v. Fleming Co., Inc.*, 735 A.2d 386 (Del. Ch. 1999) ..............................5

*Official Committee of Unsecured Creditors v. Credit Suisse First Boston (In re Exide
    Technologies, Inc.*), 299 B.R. 732 (D. Del. 2003) ..........................................................9

*Schrob v. Catterson*, 948 F.2d 1402 (3rd Cir. 1991) ...................................................................3

**Statutes**

Fed. R. Civ. P. 12(B)(6) ..................................................................................................................3

Fed. R. Civ. P. 56 .........................................................................................................................11

Doc 1304455   Ver 1

Plaintiffs, A.B. Dick Company n/k/a Blake of Chicago Corp. ("ABD"), and Paragon Corporate Holdings, Inc. ("Paragon"), debtors and debtors in possession (collectively, the "Debtors"), by and through their undersigned counsel, hereby oppose the relief requested in the motion filed by MHR Capital Partners, L.P., MHR Institutional Partners, L.P., MHRM, L.P., and MHR Fund Management LLC (collectively "MHR") for an order dismissing or, in the alternative, granting summary judgment on Counts II and III of the Amended Complaint filed by the Debtors (the "Dismissal Motion").  The Debtors respectfully request that MHR's Motion be denied for the reasons set forth below.

## Preliminary Statement

In this action, the Debtors allege several claims against MHR, including the breach of fiduciary and equitable subordination claims that are the subject of MHR's Dismissal Motion. The breach of fiduciary and equitable subordination claims are premised on other allegations in the Amended Complaint that MHR possessed and exerted controlling authority over ABD by virtue of the documents evidencing the $18,363,150.00 worth of obligations owed to MHR. Both the allegations in and the documents attached to the Amended Complaint reveal that the breach of fiduciary claim and equitable subordination claims have been properly pleaded and, as a result, the Debtors should be permitted to pursue these claims against MHR.

## Procedural Background

On July 7, 2004, the Debtors filed voluntary petitions for relief under chapter 11, Title 11 of the United States Code (the "Bankruptcy Code").  Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtors continue to manage their property and assets as debtors in possession.

On July 13, 2004, ABD filed an adversary complaint (the "Complaint") against Defendants MHR Capital Partners, L.P., MHR Institutional Partners, L.P., and MHRM, L.P. (collectively, the "MHR Entities"). In the Complaint, ABD sought a declaration recharacterizing as equity certain claimed obligations totaling approximately $18,363,150.00 (the "Obligations"), which are reflected on the Debtors' schedules of liabilities as debt allegedly owed to the MHR Entities. Approximately a week later, Paragon Corporate Holdings, Inc. ("Paragon") filed a motion to intervene in the adversary proceeding based on identical allegations and seeking the same relief as ABD. The MHR Entities filed their answer to the Complaint on August 18, 2004.

On November 2, 2004, the Debtors filed a motion for leave to amend the Complaint (the "Motion for Leave"), seeking to add claims for equitable subordination and breach of fiduciary duty and to add MHR Fund Management LLC as an additional party defendant based on facts learned during discovery in the underlying bankruptcy case. MHR filed its opposition to the Motion for Leave on November 29, 2004. Following a hearing on December 8, 2004, the bankruptcy court entered an order granting the Motion for Leave on December 30, 2004. The Debtors filed their Amended Complaint on January 5, 2005. By stipulation entered January 25, 2005, MHR's answer to the Amended Complaint was to be filed on or before February 11, 2005. MHR filed the instant Motion and a motion for determination of core or non-core status with respect to the claims asserted in the Amended Complaint on January 17, 2005. By stipulation of the parties, the Debtors' response to the Dismissal Motion was to be filed two weeks after the a ruling was entered on MHR's Motion to Withdraw the Reference. This court granted that motion on July 6, 2005.

**Law And Argument**

A.   **The Debtors Have Satisfied Their Burden Under Fed. R. Civ. P. 12(B)(6) And Should Be Permitted To Pursue Its Claims Against MHR**

In evaluating a motion to dismiss, the court must assume that the facts pleaded in the Amended Complaint are true and draw all factual inferences in favor of the non-moving party. *Schrob v. Catterson*, 948 F.2d 1402, 1405 (3rd Cir. 1991). A motion to dismiss should be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45 (1957). The likelihood that the plaintiff will ultimately prevail is not material to the court's determination. *See Scheuer v. Rhodes* 416 U.S. 232, 236 (1974); *In re Burlington Coat Factory Sec. Litigation*, 114 F.3d 1410, 1420 (3rd Cir. 1997). Therefore, dismissal under Fed. R. Civ. P. 12(B)(6) is appropriate only where a plaintiff could not be granted relief "under any set of facts that could be proved consistent with the allegations." *Gasoline Sales, Inc. v. Aero Oil Co.*, 39 F. 3d 70, 71 (3rd Cir. 1994)(citing *National Org. For Women v. Scheidler*, 510 U.S. 249, 255-56 (1994)). The Debtors have fully satisfied their burden under Fed. R. Civ. P. 12(B)(6).

The Amended Complaint sufficiently sets forth allegations that, if proven, will establish liability for MHR's breach of fiduciary duties and equitable subordination claims. As aptly described in the Amended Complaint, MHR's Notes were, in reality, equity instruments that provided MHR with the status of a controlling shareholder with fiduciary obligations. As alleged in the Amended Complaint, MHR exerted control over the Debtors that breached its fiduciary obligations and caused catastrophic losses to the Debtors. Consequently, the Debtors have adequately pleaded a breach of fiduciary duty claim under Fed. R. Civ. P. 12(B)(6).

Moreover, there are sufficient allegations to support the Debtors' equitable subordination claim. The Amended Complaint sets forth specific allegations of MHR's inequitable conduct that justifies equitable subordination of MHR's claim, regardless of whether the Court deems MHR a fiduciary of the Debtors. As a result, this claim is sufficiently pleaded under Fed. R. Civ. P. 12(B)(6) and MHR's Dismissal Motion must be denied.

> **B.    The Notes Provided MHR With Controlling Shareholder Status, Which Established Fiduciary Obligations To The Debtors As A Matter Of Law**

To establish a breach of fiduciary claim, a plaintiff must prove (1) the existence of a duty, (2) that the duty was breached, and (3) damages exist as a result of the breach. *In re Cendant Corp. Derivative Action Litigation*, 189 F.R.D. 117, 130 (D. N.J. 1999) (denying motion to dismiss where plaintiff properly alleged breach of fiduciary claim against defendant under Delaware law). It is a well settled principle under Delaware law that directors of a corporation possess fiduciary duties to both the corporation governed and its shareholders. *Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.*, 506 A.2d 173, 179 (Del. 1986); *Loft, Inc. v. Guth*, 2 A.2d 225, 238 (Del Ch. 1938) (directors of Delaware corporations owe fiduciary duties to the corporation and its shareholders). Shareholders also owe fiduciary duties to the corporation, especially where the shareholders exert control over the corporation's decisions and conduct. *Kahn v. Lynch Communication Systems, Inc.*, 638 A.2d 1110 (Del. 1993) (a minority shareholder may possess fiduciary obligations to other shareholders where control over corporate affairs is exhibited); *Ivanhoe Partners v. Newmont Mining Corp.*, 535 A.2d 1334, 1344 (Del. 1987) ("a shareholder owes a fiduciary duty...if it owns a majority interest or exercises control over the business affairs of the corporation."). Once a corporation becomes insolvent, those in a fiduciary position also owe the corporation's unsecured creditors the duty of maximizing the value of the corporation's assets for payment of its obligations to those creditors. *High Strenth Steel, Inc. v.*

*Lozinski (In re High Strength Steel, Inc.)*, 269 B.R. 560, 569 (Bankr. D. Del. 2001) (citing *LaSalle Nat'l Bank v. Perelman*, 82 F.Supp.2d 279, 290 (D. Del. 2000), and *Odyssey Partners, L.P. v. Fleming Co., Inc.*, 735 A.2d 386, 417 (Del. Ch. 1999)).

MHR asserts that it cannot be found to have fiduciary obligations to the Debtors or their unsecured creditors because it was a "mere" creditor. Although the decisions cited by MHR fail to support this proposition,[1] it is true that creditors generally do not owe a fiduciary duty to their debtors. *Aluminum Mills Corp. v. Citicorp North America, Inc. (In re Aluminum Mills Corp.)*, 132 B.R. 869, 894 (Bankr. N.D. Ill. 1991); *Badger Freightways, Inc. v. Continental Illinois Nat'l Bank and Trust Co. (In re Badger Freightways, Inc.)*, 106 B.R. 971, 976-77 (Bankr. N.D. Ill. 1989). However, an exception to this general rule exists where a lender "exercises sufficient authority over the corporate debtor so as to unqualifiably dictate corporate policy and the disposition of assets." *Aluminum Mills Corp.*, 132 B.R. at 894. "If the [lender] usurps the power to make business decisions from the [borrower's] board of directors and officers, then it must also undertake the fiduciary obligation that the officers and directors owe the corporation (and its creditors)." *Badger Freightways, Inc.*, 106 B.R. at 977. *See also Century Glove, Inc. v. Iselin (In Matter of Century Glove, Inc.)*, 151 B.R. 327, 333-35 (Bankr. D. Del. 1993) (recognizing that creditor that exercises "dominion and control" over debtor may be deemed fiduciary, citing *Aluminum Mills* and *Badger Freightways*).

In this respect, "controlling" creditors are no different than controlling shareholders. "[T]he reason that controlling shareholders can be liable for breaches of fiduciary duty is because their votes can cause the corporate entity to enter into transactions that harm the corporation but

---

[1] The opinions cited by MHR in connection with this argument do not address whether a creditor may owe fiduciary obligations to its debtor or other creditors. Rather, they stand for the principle that a corporation generally does not owe fiduciary duties to its creditors. As noted above, even the latter proposition is no longer applicable under Delaware law once a corporation becomes insolvent.

benefit those shareholders personally." *Hechinger Investment Co. of Delaware, Inc. v. Fleet Retail Finance Group (In re Hechinger Investment Co. of Delaware)*, 274 B.R. 71, 93-94 (D. Del. 2002). Here, as alleged in the Amended Complaint, MHR Entities, as the Majority Holders of the Notes, became, in all but title alone, controlling equity holders of ABD, obtaining, among others, the following rights:

- The right to require ABD to issue and sell to noteholders up to fifty percent (50%) of the outstanding Common Stock of ABD following the first anniversary of the issuance of the Notes (the "Call Option"). (Am. Complaint, Ex. A at § 7.1.)[2]

- The right to initiate a sale or recapitalization of ABD pursuant to an Initial Public Offering or an auction sale process following the first anniversary of the issuance of the Notes (the "ABD Sale Right"). (Am. Complaint, Ex. A at § 8.1.)

- The right to receive upon a sale of all or substantially all of the assets of ABD not only the principal owed under the Notes but also a distribution of proceeds reflecting the MHR Entities' proportionate share of a 50% interest in the debtor. (Am. Complaint, Ex. A at § 6.1.)

- The right to prohibit the Debtors from consummating a host of transactions that under Delaware corporate law are reserved to the discretion and authority of a corporation's directors and/or shareholders, including, without limitation: (a) an increase or decrease in the number of issued or authorized shares of capital stock of ABD ; (b) the creation of any new class or series of capital stock of ABD; (c) the amendment of ABD's certificate of incorporation or bylaws; (d) the sale or transfer of ABD's assets; (e) the declaration of dividends by ABD; and (f) entry into any new line or type of business. (Am. Complaint, Ex. A at § 11.)

- The right to require Paragon to elect to the Board of Directors of ABD director(s) designated by the MHR Entities equal in number to the number elected by Paragon (Am. Complaint, Ex. A at § 13.1.), as well as the right when no such directors had been designated to receive "information and notices generally provided to the directors of" ABD as well as "prior written notice of all scheduled board meetings (including telephonic meetings) that contains an agenda of the items and decisions to be

---

[2] Addressing this right alone, MHR sets up a "straw man" argument, asserting, correctly, that the mere fact that the Notes "were convertible to equity does not create any fiduciary relationship between Debtors and MHR." (MHR Motion at p. 9.) The Debtors do not contend that the existence or even the exercise of the Call Option, in isolation, would be sufficient for MHR to be deemed to have fiduciary relationship with the Debtors or their creditors.

>  discussed during such board meeting. . . ." (Am. Complaint, Ex. A at §§ 13.2 and 13.3.)

See also Amended Complaint at ¶¶ 13-16.[3]

Thus, as alleged in the Amended Complaint, the rights obtained by the MHR Entities under the Notes have all of the indicia of those of a controlling equity holder.  More to the point, the MHR Entities *actually exercised* certain of these rights to assume control over the negotiation of the transaction between Presstek and the Debtors.  Specifically, MHR exercised its right to have its representative, Hal Goldstein, elected as one of two directors of ABD.  (Am. Complaint at ¶¶ 18-19.)  Following the receipt of Presstek's proposal for the acquisition of ABD, Goldstein began engaging in unauthorized communications and negotiations with Presstek, not as ABD's representative but on behalf and for the benefit of MHR.  (Id. at ¶ 21.)  It was only when the Debtors were informed by Presstek that these negotiations were taking place and the Debtors made clear that Goldstein was not authorized to negotiate the transaction on the Debtor's behalf that Goldstein resigned from the ABD board.  (Id. at ¶¶ 22-24.)  Having successfully taken control of the negotiations on behalf of MHR and using the information he had obtained as a director and fiduciary of ABD, Goldstein proceeded to negotiate an entirely new deal at a substantially lower price than had previously been offered by Presstek and which contained terms that benefited and preferred MHR to the detriment of other creditors.  (Id. at ¶¶ 25-28.)

---

[3] MHR cites to a number of cases for the proposition that "arm's length contractual negotiations do not give rise to fiduciary obligations." (MHR Motion at p. 12.)  However, each of the cited decisions addresses whether a fiduciary relationship existed between the parties based upon agency principles. *Metro Ambulance, Inc. v. Eastern Medical Billing, Inc.,* Unreported Case No. 13929, 1995 Del Ch. LEXIS 84 (Del Ch. July 5, 1995)(no fiduciary relationship existed under agency theory where parties' contract did not expressly define an agency arrangement); *Abex, Inc. v. Koll Real Estate Group*, Unreported Case No. 13462, 1994 Del Ch. LEXIS 213 (Del. Ch. December 22, 1994)(tax sharing agreement did not define an agency relationship between parties that would have established fiduciary duties); *Business Funding Group, Inc. v. Architectural Renovators, Inc.* 1993 Del Ch. LEXIS 51 (Del CH. Mar. 31, 1993)(court held that accounting action did not exist because security agreements did not establish agency relationship that would have established a fiduciary relationship).  No such agency relationship is claimed by the Debtors.

In short, MHR usurped the Debtors' control over the proposed sale of ABD through its designated representative on the ABD board of directors.[4]  That Goldstein resigned from the board in the midst of this process is of no significance.  Having taken control of the transaction while it unquestionably owed fiduciary obligations to ABD and its creditors, MHR could not suddenly disclaim those duties yet remain in control of the transaction by simply having Goldstein resign as a director.  Indeed, it retained the right to direct the election of its designee to the ABD board at any time and again exercised that right just five days after the execution of the Stock Purchase Agreement that it had negotiated.  (Am. Complaint at ¶ 31.)  Having taken actual control of the Presstek transaction, MHR was obligated to act in the best interests of ABD and its unsecured creditors, maximizing the value received in the transaction.  It did not do so, instead seeking only the best deal for itself at the expense of other creditors and stakeholders as ABD slid deeper into insolvency, leading to the eventual collapse of the transaction itself.  The allegations contained in the Amended Complaint plainly state a claim for breach of fiduciary duty that survives scrutiny under Fed. R. Civ. P. 12(B)(6).

      C.      **MHR's Own Motion Identifies The Inequitable Conduct That Supports The Debtors' Equitable Subordination And Breach Of Fiduciary Claims As A Matter Of Law**

To state a valid equitable subordination claim, a plaintiff must plead three elements: (1) that the defendant engaged in some type of inequitable conduct, (2) that misconduct resulted in injury or conferred an unfair advantage on the defendant, and (3) that equitable subordination is

---

[4] It is this exercise of actual control that distinguishes the instant case from those decisions cited by MHR in which minority shareholders were found not to have assumed fiduciary obligations.  *See In re Sea Land Corp. Shareholders Litig.*, Unreported Case No. 8453, 1987 Del. Ch. LEXIS 439 (Del Ch. May 22, 1987) (breach of fiduciary claim failed where plaintiffs alleged only that defendant had the opportunity to control the corporation); *Citron v. Steego*, Unreported Case No. 10171, 1988 Del. Ch. LEXIS 119 (Del Ch. Sep. 8, 1988)(court denied shareholders request to enjoin consummation of sale as premature where plaintiff failed to plead sufficient facts indicating that actual control had been exerted over directors); *In re Western National Corp. Shareholders Lit.*, Unreported No. 15927, 2000 Del. Ch. LEXIS 82 (Del. Ch. May 22, 2000)(granting defendant's summary judgment motion on issue of fiduciary duty of minority shareholder where plaintiff failed to allege facts that established defendant's actual control over the corporation).

not inconsistent with the provisions of the Bankruptcy Code. *Citicorp Venture Capital, Ltd. v. Comm. of Creditors Holding Unsecured Claims*, 160 F.3d 982, 986-87 (3rd Cir. 1997). Any creditor is subject to an equitable subordination claim, depending on the conduct of the creditor. *Century Glove, Inc. v. Iselin* (*In re Century Glove*), 151 B.R. 327 (Bankr. D. Del. 1993)(denying defendant's motion to dismiss equitable subordination claim where plaintiff properly alleged facts sufficient to demonstrate that defendant was a fiduciary requiring easier standard to establish claim). It is not necessary to first prove that the creditor was a fiduciary of the debtor to establish an equitable subordination claim if the creditor's "conduct is otherwise sufficiently egregious to warrant the remedy of equitable subordination." *Id*. at 333.

However, where, as here, the defendant is an "insider" of the debtor, "the standard for finding inequitable conduct is less exacting." *Official Committee of Unsecured Creditors v. Credit Suisse First Boston (In re Exide Technologies, Inc.*), 299 B.R. 732 (D. Del. 2003)(denying defendant's motion to dismiss properly pleaded equitable subordination claim). An insider is defined under the Bankruptcy Code as a "person in control of the debtor." 11 U.S.C. § 101(B)(iii). "[C]ontrol" is demonstrated by alleging the source of power that the creditor allegedly used and pleading specific instances in which the power was exercised by the creditor, and lenders "have been found to be insiders" under this standard. *Exide Technologies, Inc. v. Credit Suisse First Boston*, 299 B.R. 732, 744 (finding that plaintiff sufficiently pleaded equitable subordination claim against lender).

There are "three categories of misconduct sufficient to constitute inequitable conduct: (1) fraud, illegality, and breach of fiduciary duties; (2) undercapitalization; or (3) debtor's use of the debtor as a mere instrumentality." *In re Mid-American Waste Systems, Inc.* 284 B.R. 53, 70 (Bankr. Del. 2002). To qualify as inequitable conduct "the insider or fiduciary must have used

its power to control the debtor...to its own advantage or to the other creditors' detriment." *Id*.; *CitiCorp, supra*, at 987. The sole allegation required to survive a motion to dismiss is that a plaintiff has alleged that a creditor controlled the debtor in an attempt to secure a benefit, without regard to the debtor or its other creditors. *See Century Glove*, supra, at 334 (denying creditor's motion to dismiss equitable subordination claim). That same allegation appears in the Debtors' Amended Complaint against MHR.

Thus, the Debtors sufficiently pleaded an equitable subordination claim against MHR, regardless of whether MHR is considered a fiduciary. First, the Debtors clearly pleaded that MHR acted only its own interest to the exclusion of the Debtors and other creditors. For example, ¶ 26 of the Amended Complaint asserts that MHR took "virtually complete control over the negotiations with Presstek[.]" With its control over the negotiations, the Amended Complaint further alleges that MHR "continued to demand concessions from Presstek...that were designed and intended to enrich and prefer [MHR] over other creditors[.]". Amended Complaint ¶17. The Amended Complaint further alleges that MHR's conduct caused unnecessary delays that exacerbated the Debtors' worsening financial condition, let to Presstek withdrawing its offer, and ultimately resulted in the Debtors' bankruptcy petition. *See* Amended Complaint ¶25-30, 33. Consequently, the Debtors have sufficiently pleaded a claim for equitable subordination. Thus, the Debtors alleged facts that, if proven, would establish that MHR acted inequitably in its dealings with the Debtors.

### D.  MHR Has Failed To Establish A Right To Judgment As A Matter Of Law

To establish a right to summary judgment, a movant must be able to demonstrate that the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law." Fed R. Civ. P. 56(c). Upon evaluating a motion for summary judgment, the court must review the facts in the light most favorable to the non-movant. *Bixler v. Central Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1297 (3d Cir.1993)(stating the standard for obtaining summary judgment). However, if the non-moving party can demonstrate specific facts indicating that an issue for trial exists, than summary judgment is inappropriate. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(discussing corresponding burden of movant and non-movant on summary judgment). It is obvious that summary judgment is not appropriate at this juncture.

MHR has not even come close to meeting its burden under Fed.R.Civ.P. 56. Citing to an April 14, 2004 resolution of the Paragon board of directors and an April 2, 2004 e-mail authored by the chairman of that board, MHR asserts that "the Debtors fail to inform this Court that they expressly stated that MHR was *not* representing the interests of the Debtors with respect to . . . any stock purchase agreement negotiated by MHR and Presstek. (MHR Motion at p. 16.) To the contrary, the Debtors allege that they had informed Presstek in March of 2004 that Goldstein "lacked the authority to negotiate on behalf of Paragon and ABD. . . ." (Am. Complaint at ¶ 22.) Indeed, it is the gravamen of the Debtors' fiduciary duty claim that Goldstein and MHR were never authorized to negotiate on behalf of the Debtors and that at all times, including when Goldstein was a director of ABD, he was negotiating with Presstek on behalf and for the benefit of MHR.

More important, MHR fails to explain the legal significance of the contents of these evidentiary materials. All that they reflect is a recognition on the part of the Paragon board and its chairman of the reality that MHR had already hijacked and taken control of the negotiations through Goldstein's position on the ABD board and the threat to exercise its right to prevent the

sale of ABD's assets. There was no deal to acquire ABD precisely because MHR had decided to exercise control and negotiate terms that benefited and were preferential to MHR to the exclusion of other creditors. Paragon withdrew from the negotiation process only after and as result of the usurpation of the process by MHR. Far from contradicting the Debtors' factual allegations or undercutting their legal theories, the facts offered by MHR are entirely consistent with the Debtors' claims.

Whether the Debtors "openly encouraged" MHR's participation in the negotiations *after* MHR had already commandeered the process is simply immaterial to whether MHR thereafter discharged its duties to maximize the value of ABD's assets for the benefit of all creditors and stakeholders and to avoid self-dealing. As alleged in the Amended Complaint, it did neither, pursuing the payment of unjustifiable fees and demanding restrictions on the Debtors' financing relationships that delayed and then ultimately killed the proposed transaction. There is no dispute about what the Paragon board and its chairman said in April of 2004. But those undisputed facts do not establish that MHR is entitled to judgment as a matter of law. Its request for summary judgment "in the alternative" must be denied.

## Conclusion

Clearly, the Debtors have sufficiently pleaded claims for MHR's breach of fiduciary duties and equitable subordination. The Amended Complaint sufficiently details allegations that, if proven, establish MHR's liability for these claims. Moreover, MHR has failed to meet its own burden on summary judgment and has simply revealed factual disputes that preclude summary judgment at this time. Thus, for the foregoing reasons and authorities cited, the Debtors respectfully request that the Court deny MHR's Dismissal.

Dated: July 20, 2005
       Wilmington, Delaware

Respectfully submitted,

**JASPAN SCHLESINGER HOFFMAN LLP**

/s/ Frederick B. Rosner_____
Frederick B. Rosner (# 3995)
913 N. Market Street, 12th Floor
Wilmington, DE 19801
Tel:   (302) 351-8000
Fax:  (302) 351-8010
frosner@jshllp-de.com

and

**BENESCH FRIEDLANDER COPLAN & ARONOFF LLP**

H. Jeffrey Schwartz (OBR #0014307)
Mark A. Phillips (OBR #0047347)
2300 BP Tower, 200 Public Square
Cleveland, OH 44114-2378
Tel:   (216) 363-4500
Fax:  (216) 363-4588
jschwartz@bfca.com
mphillips@bfca.com

Attorneys for Plaintiffs